Good morning, your honors, and may it please the court. My name is Mark Ebert and I represent Mr. Rodriguez. I want to start out by bringing to the court's attention a supplemental authority that I found last night. I gave it to my opposing counsel and it turns out he already knew about it, but it's not cited in either of our briefs. It's U.S. v. Rodriguez-Gamboa, 946 F. 3rd, 548, 9th Circuit, December 27th, 2019. It ruled that the California statute in this case, 11-378, was not categorical, not categorically the same as the federal drug laws. That's similar to Lorenzo. However, it went where Lorenzo didn't go and it remanded the case to the district court to determine whether that isomer that the government... That's on an over-breath theory? Yes, yes, that it contains types of methamphetamine that are not illegal under federal law. But if I recall correctly, that issue has not conclusively been determined because it got remanded back to the district court for further factual findings. That's right, and it has not come back to the 9th Circuit yet. My understanding is that there was a hearing on it recently, but not a decision in the district court. And I don't know how the court decides what order cases are decided in terms of what panel, whether you'll be waiting for that decision or whether you'll decide it in the first instance, but I thought you ought to know about it if you didn't. The simplest way to decide the recusal issue is under 28 U.S.C. 144, which simply says that the recusal issue must, or I think the word is shall, go to a different judge. And the judge that's being challenged... Doesn't it have to be a legal basis before it has to go to a... Well, here, as I understand it, correct me if I'm wrong, I thought there was no allegation that the judge had information from a nonjudicial source. It was just a matter of the judge having information from the judicial sources. Well, I'm not sure that the issue was information. I think the question was whether the bias may have come from a nonjudicial source. Okay, but just the same, I thought what happened here was there wasn't any nonjudicial source. No, there's two answers to that. One is that under a number of cases that I cited in my brief, it doesn't have to come from a nonjudicial source. That is, I think it was a Supreme Court case, says that that is the typical way, but that's not the only way, if it's severe enough, it can come from... Sure, but the bias has to, that can be the case. It can be the case either way. Here, what it looked like was if the judge had a developed hostility, it was toward the lawyer, not the client. And, again, just to finish my answer to the first one, the nonjudicial source would have been the other panel's overturning of the district court's decision, the 50-year sentence. As far as bias... Yes. But that's okay. Well, but I think that the bias... Because that's not a bias against the defendant, Rodriguez. It's just a bias against, well, say, us, which is okay. There's actually a lot to unpack in your question, Your Honor. First of all, I think that the bias from the extrajudicial source was that he was overturned. He wasn't just saying, I don't like the Ninth Circuit. He was saying, what do they know on this case? What do they know about how much he should be sentenced to? And that distinguishes this district judge from a lot of others? No, but that is a source of his anger and his being upset and a bias, I think. Secondly, I cited numerous cases... What do you mean by bias, exactly? Bias against the defendant because he said, again, there's so many answers to what you just said. He said before he even heard any evidence or before he had a hearing on the resentencing, he said, well, I'm going to sentence him to the exact same thing, or I may sentence him to life in prison. And that, I think, definitely shows bias against the defendant. I don't know about that. You get cases all the time. In fact, I think we've had a couple of decisions where we said that this would enable us to resolve a case where a judge has a complex guidelines determination to make. He makes it. He realizes it's arguable. And he says, but even if I'm wrong on this, I'd give the same sentence anyway, so it doesn't matter. I think here he didn't hear the argument before he said that. He didn't hear whether it was divisible. Given the guidelines, I'm not sure how you could utilize his statement that he would impose a similar sentence again, which he ultimately didn't, right? It's a lesser sentence. But can I ask you about your career offender argument? Sure. And the Rodriguez-Kimboa's potential impact on this case. My question is, what difference does it really make? Even if he somehow erred in the career offender calculation, the guideline range in this case was the one that controlled, because that's much greater than Section 4B1.1, right? And if you look at just the career offender, I would be forced to agree with that, that it was within the guideline range, although it was also he, the judge, imposed a sentence that was above the bottom of the guideline range and above what probation recommended. And there's no way to tell, especially given the way that this judge was so extremely harsh in his statements throughout all these hearings, that that didn't affect the guideline range. Not all his statements. It really struck me that the judge said that he thought Rodriguez was a changed man. He did say that at one point, but he also said a lot of other things about him. Just I want to make sure that I understand your position. There isn't a dispute that he is in Category 6, his criminal history, puts him there? Here's the thing. Again, all these things are related. If the California statute is not categorically the same as the federal law, and if it's not divisible, then that affects the 851, which would affect his guideline range. It affects the career offender, which would affect his guideline range. There's also the question of – Well, have you calculated to see how many criminal history points he would have, assuming that you prevail on your arguments? Because he had 16, as I see it from the record, criminal history points, and it takes 13 to put him in Category 6. So that means that it's a 360 to life guideline range. I have not made that calculation, and I probably should have. But all I'm saying is that these things are so interrelated. Let's say that the court decides that he should have recused himself, and it goes back to a different judge. They could decide that the 851 doesn't apply. They could decide that the career offender doesn't apply. They could decide on the acceptance issue differently, and that's the part that was under seal, of course. And they could decide to sentence within the probation officer's recommendation, which was within the guidelines of 30 years. So, again, I wasn't able to answer all of your questions because there were multiple, but they all affect each other. Imagine a world where the prejudice must be extrajudicial. What is the extrajudicial source of prejudice here? That would be the Ninth Circuit decision overturning the 50-year sentence. And I think he did express hostility, not just to the Ninth Circuit in general, but to that decision and the court that made that. But doesn't the hostility need to be expressed against the party? No. I cited numerous cases that say that it can be expressed against the attorney and that that can affect the judge's attitude towards the defendant. And I think that's what happened here. By the way, out of curiosity, if the case were to be remanded, you don't want to go before the sentencing judge, and you also requested that you not go before Judge Houston. It just strikes me that that's emblematic of the deficiencies in your claim. What other judges would you not like to go before if this court were to remand the case? None. The only reason that I mentioned Judge Houston was because the judge in this case made an erroneous statement that the defense attorney had been sanctioned by that judge. Apparently, that sanction was overturned on the merits. And, I mean, it just seemed to me that that would not be the right judge to send it to. But I'm not judge shopping. I have no prejudice against any of them other than the one that gave him the sentence. And I'd like to save my last four seconds for rebuttal. I'll put a minute on the clock for you to do rebuttal. Good morning. Your Honors, may it please the Court, Mark Rahe for the United States. Your Honor, this court should affirm the denial of the motion to recuse. There have been several questions that have pointed to the extrajudicial factor doctrine, and we would stand by the position that there was nothing extrajudicial here. I believe my opponent is under the impression that, you know, because there was an opinion from this tribunal, and that's outside the four corners of Judge Benitez's court and that that somehow makes it extrajudicial, we would say that it isn't. It's still a formal judicial proceeding, and the Supreme Court itself in Lateke v. United States said that. I'm trying to understand that. I think the extrajudicial information was that two judges on the Ninth Circuit thought that the previous sentence was pretty harsh, and that was it. Is that what we're talking about, or are we talking about something else? Well, I don't know. I don't think it's anything more than that. But, again, even Lateke says prior proceedings in the same case count as intrajudicial. Oh, so what you're addressing is something different. If two judges on the Ninth Circuit had said, wow, this fellow, Rodriguez, is a really bad guy, I hope his sentence is sufficiently harsh when it gets back there. But we didn't say anything like that. No. And you're saying even if we had, it wouldn't matter because it's not extrajudicial? Correct. I mean, my understanding is. Okay, now I understand why you're arguing that. You know, if a judge says something in a newspaper article or sits on a board of directors where the defendant lives at his co-op and says something, I think that's what it's meant, something having nothing to do with judicial proceedings. But here, I mean, even the Ninth Circuit opinion, it exists in a vacuum. What defense is having problems with is the judge's reactions, which are all expressed in judicial hearings. And even Lateke itself says opinions formed or, you know, stated from the bench, except in the rarest of circumstances, should not give rise to a recusal motion. Now. I was inquiring to make sure that I had it right. But you're now addressing facts that would be much more problematic for your side of the case if they had occurred and saying even that wouldn't matter. But we don't need to get there, right? Fair enough, Your Honor. And even aside from the extrajudicial factor, I mean, there has been language. You know, we cite a case at 29 of our brief. This is this court in Cintron. Personal bias to require recusal or remand to a different judge must be against the party, not against the attorney for the party. I know my opponent has said that he has cited many cases that hold otherwise, but the government certainly isn't aware of that. And here, I mean, there's no question. I don't think we need any absolute proposition, do we? Because if a judge said, I think you're a sleazy lawyer and I'm going to hammer anyone you represent, that would be a different situation. That would be different. So I wouldn't want to say never, just hardly ever. Fair enough as well, Your Honor. I mean, here, you know, even when I re-reviewed the record, I mean, there's no question that there was animosity between the district judge and defense counsel. But there's also no question that defense counsel kept fighting for his client. And even Lateke says in the end, even for in-court judicial bias to be so strong, it has to reflect such a high degree of antagonism as to make fair judgment impossible. And I would point the court to Excerpt of Record 48, and this is basically at the point where Judge Benitez is imposing a sentence. He says, so to the extent that I'm not happy with you, Mr. Boltex, that's defense counsel, your efforts will have in the end resulted in a reduction in the sentence that I'm going to impose for Mr. Rodriguez. What page are you looking at? That is page 48 of the Excerpts of Record. And he says, so to that extent, you can consider it a victory. And then he goes on to say, I'm not taking back anything I've said about your conduct, but this is a victory for the client. I feel that epitomizes this judge's ability, notwithstanding the rancor with defense counsel, to still impose fair judgment. And, you know, I mean, it was a very substantial reduction. It was a 15-year reduction. The judge did notice that the defendant had been, appeared to be a different man. I know there's Excerpts of Record 265-69. It's under seal, but there's things in there that the district court was basically complimenting or encouraging the defendant. So, again, zero animosity towards the client himself. And then I guess another point I wanted to bring up, I know that my opponent seems to put a lot of weight in the fact that the judge said he was going to, you know, repeatedly threaten to sentence him to the same sentence or even to life. And I want the record to be clear on that. There was nothing about repeatedly threatening. At the very first mandate hearing, that's in July of 2017, two or three pages in, the judge, I think, you know, he's thrown off a little. He says, Look, if I were to resentence him right now, I'd do the same. That's the only time he ever said that. The actual sentence was seven months later. And not only that, at the end of that same July 2010 mandate hearing, at the very end, the district court says, You know, Mr. Voltax, I'll be happy to hear with what you, you know, you come back at the time of sentencing. So he had already walked even back that initial statement. And as far as the life sentence, every single time that comes up, the court never says, I'm going to impose life sentence. All he says is, If the prosecutor proves two or more prior drug convictions, my hands are tied. And he uses colorful language like, Can you give me a site that I can tell Congress to go fly a kite? If, you know, you fall under the plain language, there was never, all that was, he could have said that ten times, a hundred or a thousand times. That's correct every single time, but that's not a threat. Why didn't the government present evidence of more than one felony? You know, I think in the end, just to maybe try to, you know, winnow down the issues on appeal, also because the ultimate sentence that my colleague recommended still fit within the guidelines. I mean, there had been so much litigation. I mean, it's kind of ironic. That was the sole reason that the case was remanded the first time around. But then in the end, I think they just, you know, he wanted to basically say, Look, one is enough. You get a 20-year floor, and then we'll argue from there. Counsel would argue that if HNS 378 is held to be overbought, that that somehow would affect his criminal history points. I'm not aware of that, Your Honor. In our position, you know, I appreciate counsel bringing the Rodriguez-Gamboa case. I was informed, I think, Judge Wright had a hearing on that last week. That will be a while before it gets before this court. Even if that goes completely in the defense's favor, our position still is that it's harmless because his base defense level was 40. The career offender table says if you qualify, you go to 37. So, you know, it wasn't lower. And our position is that he still is going to be Category 6. It was 360 to life. That will still be the range. So, you know, other than a passing reference to his imposing the career offender guideline, you don't see anything in the record where that affects the district court's judgment. Are you saying he'd be Category 6 regardless of the categorical, non-categorical discussion? That is our position, yes, because accounting for criminal history points isn't about the categorical approach. As a career offender, you have to satisfy that because then you have to have either a violent felony or a drug-trafficking offense as it's defined. But it wouldn't change his criminal history points calculation anyway. That's our position. And I know my opponent didn't reach the substantive reasonableness. I'm happy to submit on what we have in our brief unless the court has questions on that. Judge Pauley? No. I think we're satisfied. Thank you. Thank you. Thank you for the minute. And I'm just going to try and make two points. The first is that the probation officer recommended that a 30-year sentence, which is five years less than what was imposed, and I believe that was within the guideline range. So what? He doesn't have a presidential commission. The point is that there can be an effect from all of these things. No, but district judges differ with probation all the time. I'm not arguing that because he differed with probation. What I'm arguing is that he could have had a lower sentence and that it was within the guideline range. There are staff, a probation officer's recommendation, it's like a law clerk's recommendation for how to decide a case. And, again, I'm not saying that it's because the probation officer recommended it. I'm just disagreeing with my opponent that nothing would change. In other words, there was a basis for a lower sentence, and that's not even including the acceptance possibility that's dealt with in the under seal thing. And the last point I want to make is that the ‑‑ So is it the appellant's position then that now the sentence should be 360 months? Because at the sentencing, counsel said it should be 189 months, right? I wasn't the defense counsel, but it's not unusual to ask for a variance. And I'm not asking for a specific sentence. I'm asking for a resentencing before a judge that's not biased. And the only thing I wanted to add is that the comment that my opponent was talking about is how your efforts led to a reduction in the sentence. That was because the appeal occurred while there was a two‑point decrease in the guidelines. He wasn't saying you did a great job. And the one time when he complimented the defense attorney, he said, yes, but my tongue was firmly in my cheek when I said it. So I think the rancor that my opponent talks about is clear from just about every page of the record. Thank you very much, counsel, for both sides for your argument. The matter is submitted.
judges: Kleinfeld, Nguyen, Pauley